**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JIMMY TOBIAS**, | |
| *Plaintiff*, | |
| **v.** | **Case No. 1:22-cv-696-RCL** |
| **U.S. DEPARTMENT OF INTERIOR** *and* **U.S. FISH AND WILDLIFE SERVICE**, | |
| *Defendants*. | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Before the Court is Plaintiff Jimmy Tobias's Petition for Attorneys' Fees and Costs. *See* ECF No. 32 ("Petition" or "Pet."). For the reasons that follow, the Petition is **GRANTED**.

## I.    BACKGROUND

Jimmy Tobias is a freelance investigative reporter whose reporting focuses on environmental and public health issues. *See* Decl. Jimmy Tobias ¶ 4, ECF No. 32-2 ("Tobias Decl."). Between March 11 and September 29, 2021, Tobias filed nine requests under the Freedom of Information Act ("FOIA") with the Department of Interior and the Fish and Wildlife Service, the defendants in this case. *See* Decl. Saundra Brinsley ¶¶ 8, 13, ECF No. 35-2 ("Brinsley Decl."); Decl. Shaunta Nichols ¶¶ 8, 19, 25, 33, ECF No. 35-3 ("Nichols Decl."); Decl. Cynthia Sweeney ¶¶ 8, 19, ECF No. 35-4 ("Sweeney Decl."). The defendants acknowledged receipt of each of Tobias's requests. *See* Brinsley Decl. ¶¶ 9, 14; Nichols Decl. ¶¶ 9, 20, 26; Sweeney Decl. ¶¶ 9, 20. From there, however, the defendants' responses varied:

- Request DOI-FWS-2021-005076, filed on July 15, 2021, sought communications to or from a political appointee using the phrases "smelt," "salmon" or "Souza." Nichols Decl. ¶ 8. After several inquiries from Tobias, FWS confirmed on December 13, 2021,

that it had located responsive records and estimated it would complete its review of those records by the end of that month. *See Id.* ¶¶ 11–12. Following additional inquiries, on February 9, 2022, FWS indicated that it still had yet to make a final determination as to the documents and indicated it would do so within two weeks. *Id.* ¶¶ 13–14. The defendants did not produce documents until May 24, 2022, more than two months after Tobias filed this lawsuit on March 14 of the same year. *Id.* ¶ 16.

- Request DOI-FWS-2021-005143, filed on July 20, 2021, requested copies of all reimbursable agreements between the FWS and private third parties since January 1, 2011. *Id.* ¶ 19. Apart from acknowledging receipt of the request, FWS provided no further information about the request, and it did not respond to two inquiries from Tobias seeking information regarding estimated completion dates. *Id.* ¶¶ 20–22. The defendants did not produce documents until June 28, 2022, more than three months after Tobias filed this lawsuit. *Id.* ¶ 23.

- Request DOI-FWS-2021-006184, filed on September 21, 2021, sought documents and other materials related to an Office of Inspector General ("OIG") investigation. *Id.* ¶ 25. FWS informed Tobias that his request required consultation with OIG and other FWS staff and, therefore, was considered "complex." *Id.* ¶ 28. Tobias made two further inquiries regarding the estimated completion dates for his request but received no response. *Id.* ¶¶ 28–30. The defendants did not produce documents until May 10, 2022, several months after this litigation began. *Id.* ¶ 31.

- Request DOI-FWS-2021-006390, filed on September 29, 2021, sought copies of FWS's investigations into three individuals featured in the Netflix documentary series "Tiger King." *Id.* ¶ 33. FWS acknowledged receipt of the request but did not provide

information about an estimated completion date, despite an inquiry from Tobias. *Id.* ¶¶ 34–38. The defendants ultimately produced responsive documents on April 22, 2022. *Id.* ¶ 39.

- Request SOL-2021-002954, filed on March 11, 2021, sought the calendars of eighteen Interior Department appointees since January 20, 2021. *See* Brinsley Decl. ¶ 8. The government asserts that prior to the March 14, 2022, filing of this lawsuit, the agency "had begun processing the request in accordance with its standard procedures," including by "identifying potentially responsive records and preparing them for review." *Id.* ¶ 10. But the defendants did not produce responsive documents until after the filing of the lawsuit, eventually producing "410 pages of responsive documents" during the period "[b]etween the filing of [Tobias]'s lawsuit and March 7, 2023." *Id.* ¶ 11.

- Request DOI-SOL-2021-006310, filed on September 27, 2021, requested any communications sent or received by the Solicitor of the Interior, Robert Anderson, that referred to a pipeline being built in Minnesota. *Id.* ¶ 13. The defendants again assert that they had begun processing the request, but they did not produce documents until March 6, 2023, nearly a year after this lawsuit was filed. *Id.* ¶¶ 15–16.

- Request DOI-OS-2021-002942, filed on March 11, 2021, requested the calendars of eighteen Interior Department appointees beginning January 20, 2021. Sweeney Decl. ¶ 8. After Tobias inquired about an update in October 2021, the agency responded that it would provide at least an interim response by November 5, 2021. *Id.* ¶¶ 9–11. The agency then responded again on November 4, indicating a completion date around the end of that month. *Id.* ¶ 12. After no production was made by that deadline, Tobias again sought an update on January 13, 2022, and the agency indicated it would provide

3

a first release by February 15, 2022. *Id.* ¶¶ 13–14. It failed to meet that deadline, but the defendants ultimately produced 4,885 pages of documents across twelve productions between March 14, 2022, and January 8, 2024. *Id.* ¶ 16.

- Requests DOI-OS-2021-006309 and DOI-OS-2021-006311, each filed September 27, 2021, requested documents sent or received by either Deputy Secretary Tommy Beaudreau or by Laura Daniel-Davis related to the Minnesota pipeline. *Id.* ¶ 19. The office consolidated those requests into a single request numbered DOS-OS-2021-06308. *Id.* ¶ 21. It did not provide further updates or produce documents prior to the initiation of this litigation, but it ultimately produced 461 documents following the filing of the Complaint. *Id.* ¶ 23.

Thus, in some cases, the agency provided no timeline for producing the requested documents; in others, it provided timelines, but failed to comply with them. With respect to two requests, the defendants avow that they began work on Tobias's requests prior to his filing suit. It is undisputed that with respect to every one of the foregoing requests, however, the defendants had produced *no* documents prior to the initiation of this lawsuit and had not given credible representations about when they might do so.

The procedural history of this case is common fare for FOIA disputes. Tobias brought suit under FOIA on March 14, 2022. *See* Compl., ECF No. 1. Over the next several years, the defendants produced responsive documents and the parties kept the Court apprised of their progress at ninety-day intervals. As of November 2024, the defendants represented that the only outstanding documents related to Request OS-2021-2942, and remained pending because the relevant FOIA office was awaiting feedback from agency stakeholders. *See* Joint Status Rep. of Nov. 18, 2024, ECF No. 23 at 2. One week later, the Court ordered the parties to file monthly

status reports and to propose a schedule for briefing dispositive motions. Order of Nov. 25, 2024, ECF No. 24 at 1–2. Over the following three months, the parties finalized production and settled their merits dispute without briefing, *see* Joint Status Rep. of Feb. 5, 2025, ECF No. 29 at 1–2, and by March 7, 2025, the parties stipulated to dismissal, except for the instant dispute over attorneys' fees, *see* ECF No. 30.

Tobias petitioned for fees and costs on March 18, 2025. The defendants opposed on May 1, 2025. *See* Mem. in Opp'n, ECF No. 35 ("Opp'n"). Tobias replied on May 15, 2025. *See* Reply, ECF No. 36. The petition is now ripe.

## II.    LEGAL STANDARDS

A court "may assess . . . reasonable attorney fees and other litigation costs reasonably incurred" by a FOIA plaintiff who "has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). To obtain fees and costs, the plaintiff must show both his "eligibility and entitlement" to such an award. *See Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017). After the plaintiff shows he is both eligible for and entitled to fees, he must further demonstrate that the award sought is "reasonable." 5 U.S.C. § 552(a)(4)(E)(i).

## III.    ANALYSIS

### a.   Eligibility

The first step in obtaining attorneys' fees under FOIA is to demonstrate eligibility. "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368 (D.C. Cir. 2006)). "[A] complainant has substantially prevailed if the complainant has obtained relief" if litigation produces either of two results: either (1) "a judicial order, or an enforceable written agreement or

consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(i)).

In this case, Tobias claims he is eligible under the second approach, often called the "catalyst theory."  *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam) (quoting *Brayton*, 641 F.3d at 524–25).  Under that approach, the controlling question is whether the filing of the Complaint "was a substantial . . . cause of the defendant's change in conduct."  *Id.* at 97 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 610 (2001)).  Tobias carries "the burden of showing 'that it is more probable than not that the government would not have performed the desired act absent the lawsuit.'"  *Id.* (quoting *Pub. Citizen Health Res. Grp. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).  On all of this, the parties agree.

The consensus ends there.  In the government's view, Tobias's only evidence of sudden acceleration is the fact that the government's eventual production occurred after he filed the Complaint in this case.  Of course, it is settled law that "the mere filing of [a] complaint and the subsequent release of the [requested] documents is insufficient to establish causation" under the catalyst theory.  *Id.* (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)).  Thus, although the government does not dispute that it produced the requested documents only after Tobias filed this lawsuit, a mere showing of "post hoc ergo propter hoc" is not enough.  *Id.* (quoting *Cox v. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979)); *see also* Opp'n 10–12 (acknowledging filing of Complaint on March 14, 2022, and that all production occurred after that date).

Tobias argues that the procedural history of this case supports a far stronger inference than the *post hoc* fallacy.  He acknowledges that mere sequencing is not enough, but he contends

that the way his case unfolded suggests that the filing of his lawsuit resulted in a "sudden acceleration" in the agency's responses to his requests.  Many courts have recognized that "an agency's 'sudden acceleration' in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (quoting *Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011)); s*ee also Louise Trauma Ctr. v. Wolf*, No. 20-cv-2348-DLF, 2024 WL 4227617, at *2 (D.D.C. Sept. 18, 2024) (noting that the D.C. Circuit "has not ruled out that 'a sudden acceleration of production' may prove causation" (quoting *Grand Canyon Tr.*, 947 F.3d at 97–98)).

Here, Tobias contends that "the absence of any meaningful movement on any of [his] nine requests over the course of a year, coupled with fast movement shortly after the lawsuit, makes it likely that the lawsuit influenced the agency's timing." Pet. 7–9; Reply 15.  Indeed, the record evidence supports the link Tobias proposes between the timing of his lawsuit and the defendants sudden activity with respect to his requests: As explained in Part I *supra*, the defendants began answering Tobias's nine requests, some of which had remained pending for over a year and had no estimated completion date, only — and promptly — after he brought this lawsuit.

The Court agrees that this case bears symmetry in key respects to *Louise Trauma Center v. Wolf*.  Following the initiation of that lawsuit, the defendant agencies answered and promptly "reported that several parts of their search were complete and that the rest was underway, with the first records to be released in less than a month." 2024 WL 4227617, at *1.  The Court took no haste in concluding that the lawsuit was "the most natural explanation for the sudden movement on the [plaintiff's] FOIA request" and thus found that the plaintiffs had met their

7

burden as to eligibility.  *Id.* at *2.  And indeed, the defendants' protracted failure to produce any documents in the period following the requests gives rise to a reasonable "inference that the agency forgot about, or sought to ignore, [Tobias's] request" and, therefore, that the filing of his lawsuit more likely than not caused the agency to alter its position.  *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 41 (quoting *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016)).

But Tobias's petition presents an even stronger case for entitlement than *Louise Trauma* because the defendant agencies here, for many of these requests, initially provided estimated completion dates to Tobias before repeatedly violating them — or becoming unresponsive altogether.  This fact undermines the defendants' efforts to excuse their delay by pointing to backlogs and administrative burdens[1] because, as the D.C. Circuit has recognized, an agency facing backlogs can — and in fact, must — still act with due diligence.  *See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981) (citation omitted) (recognizing that "an unavoidable delay accompanied by due diligence in the administrative processes" forecloses the conclusion that a plaintiff "substantially prevailed in his suit").  Congress demands no less, as FOIA sets forth strict and mandatory deadlines for production of respective records and requires that agencies "shall establish" a method for requesters to obtain "information about the status of [their] request," and that such information shall "includ[e] an estimated date on which the agency will complete action on the request."  5 U.S.C. § 552(a)(7)(B)(ii).  These requirements apply even to agencies facing backlogs.

Yet according to the defendants' own evidence, just one defendant agency made an effort at diligence with respect as to only one of the nine requests at issue in this case, and even that

---

[1] The defendants describe the administrative burdens they face by providing three materially identical declarations, averring that "[t]he timing of the releases was a function of [the defendants'] FOIA backlog, the complexity of the requests, and available resources — not a result of the lawsuit."  Brinsley Decl. ¶ 24; *accord* Nichols Decl. ¶ 47; Sweeney Decl. ¶ 34.

effort ultimately fell short.  With respect to Request DOI-OS-2021-002942, DOI proactively identified that it could not meet its initial self-imposed deadline of November 4, 2021, indicating it would need several more weeks.  It blew through that deadline, however, and upon further inquiry by Tobias, the agency asserted it would be ready to provide a first release by February 15, 2022, less than a month before the filing of the Complaint in this case.  *See* Brinsley Decl. ¶¶ 9–14.  DOI ultimately provided no documents prior to the initiation of this lawsuit.  This was the agency at its most diligent — and even so, it still repeatedly transgressed its self-imposed deadlines.  The defendants have not provided evidence of any further diligence with respect to this request or any other.  In sum, although the defendants' conduct may be a result of some "unavoidable delay," such delay was not "accompanied by due diligence in the administrative process[]."  *Church of Scientology*, 653 F.2d at 588.  In the face of such deficiencies, the Court has ample reason to conclude that the lawsuit more likely than not spurred the defendants to accelerate their response to Tobias's requests.  That finding is what the law requires.[2]

### b.  Entitlement

Having concluded that Tobias is eligible for a fee award, the Court now proceeds to the second step: whether Tobias is *eligible* for such an award.  *See Kwoka v. Internal Revenue Serv.*, 989 F.3d 1058, 1063–64 (D.C. Cir. 2021).  This inquiry requires the balancing of four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's

---

[2] Tobias also asserts a second basis for finding that this lawsuit catalyzed the resolution of his requests.  On December 13, 2024, the Court entered an order requiring the government to accelerate the resolution of outstanding consultations with other agencies and directing accelerated briefing of dispositive motions.  Tobias contends that "it is likely that the Court's order to wrap up the case caused the agency to complete, within two weeks, consultations [with other agencies] that had been pending for sixteen months with no progress in the last nine."  Pet. at 14; Reply at 15.  Because the Court already has decided that the initiation of the lawsuit accelerated the resolution of each request, it declines to address whether the December 2024 order had a similar effect.

withholding of the requested documents." *Id*. at 1063 (quoting *Morley v. Cent. Intel. Agency*, 810 F.3d 841, 842 (D.C. Cir. 2016)). "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). The fourth factor asks whether the agency had a reasonable or "colorable basis in law" for not complying with the request. *Id.* at 1163.

Tobias contends that he has satisfied the first prong because his requests were designed to shed light on issues of public importance. "[T]he public-benefit factor requires an ex ante assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley*, 810 F.3d at 844. The question is whether the requests had "a modest probability of generating useful new information about a matter of public concern." *Id.* Tobias characterizes his requests as meeting that standard because they:

> concern the effects on wildlife of a government water diversion program potentially in violation of the Endangered Species Act; payments by developers to agencies for the agency to complete actions necessary for permit applications, which creates an obvious appearance of a conflict; agency action on controversial pipeline; potential law enforcement investigations into individuals appearing on a widely-circulated, Emmy-nominated documentary, where law enforcement actions had already been taken against others on the documentary who had performed arguably similar conduct; and the calendars of various political appointees, which Tobias has used in the past to expose potential ethics violations at DOI.

Pet. 15. He cites cases explaining that FOIA requests designed to surface information about law enforcement policy, conflicts of interests, and agency compliance with federal environmental laws meet the criteria of the public-concern prong. *See Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (law enforcement matters); *Wash. Post Co. v. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 265 (D.C. Cir. 1982) (conflicts of interest);

*Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 365 F. Supp. 3d 993, 999 (N.D. Cal. 2018).

The defendants respond, with unpersuasive flippancy, that the documents it eventually produced "are a snoozefest," and they include part of their production as "an example of the less-than-riveting read these records provide." Opp'n 29. But the applicable legal standard calls for an assessment of foresight, not hindsight,[3] and pays "little or no regard to whether any documents supplied prove," in fact, "to advance the public interest." *Morley*, 810 F.3d at 844. Consequently, even if the Court agreed with the defendants' say-so concerning the civic value of their production, that finding would remain irrelevant to the question at hand. The first factor weighs in Tobias's favor.

The second and third factors, which examine the "commercial benefit" and "plaintiff's interest," are "[c]losely related and often considered together." *Kwoka*, 989 F.3d at 1064 (quoting *Tax Analysts v. U.S. Dep't of Just.*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)). Together, "the two factors 'assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees.'" *Id.* (quoting *Davy*, 550 F.3d at 1160). The D.C. Circuit has long held that these factors "generally should weigh in favor of . . . journalists unless their interest 'was of a frivolous or purely commercial nature.'" *Id.* (quoting *Davy*, 550 F.3d at 1161). Tobias, a widely published investigative reporter, would seem to fit squarely within those precedents' reach.

The defendants, however, contend that Tobias is a "prolific requestor and frequent litigator," who "churn[s] out new FOIA actions" in district court, somehow suggesting that

---

[3] The defendants do dispute, in less than a single sentence, whether "it was apparent *ex ante* that the public would derive any benefit from [their] responses to the[] requests," but such a conclusory assertion unsupported by any analytical or evidentiary support does not persuade the Court.

undermines his journalistic purpose.    Opp'n 30–31.    They point, for example, to the autobiographical information on Tobias's profile on the social media platform X, where he identifies as an avowed "FOIA fan."  *Id.* at 30.  This argument lacks seriousness in the context of this case.  The Court echoes Tobias's rejoinder: he "is a prolific requester because he is a prolific journalist who frequently uses FOIA in his reporting."  Reply 20.  The D.C. Circuit has made clear that news or scholarly interests, "regardless of private incentive, generally should not be considered commercial interests."  *Kwoka*, 989 F.3d at 1065 (citing *Davy*, 550 F.3d at 1160).  Because the Court is persuaded that Tobias filed these requests based on professional and journalistic motivations, the second and third factors weigh in his favor.

Finally, the fourth factor asks "whether the agency has shown that it had any colorable or reasonable basis for not disclosing the relevant material."  *Morley*, 894 F.3d at 394 (internal quotation marks omitted).  The burden is on the agency, which is better situated to understand the reasons it relied upon at the time it acted.  *See Davy*, 550 F.3d at 1162 (reversing district court for placing burden on requester).  Here, the government contends that the agencies' "backlog of other FOIA requests" provided "a reasonable basis for not releasing the records at issue sooner."  Opp'n 24.  As explained above with respect to the eligibility prong, the Court is not persuaded by the agency's efforts to justify its conduct by reference to backlogs because they fail to identify credible evidence supporting a finding that they acted with "due diligence" despite the delay, *see Church of Scientology*, 653 F.2d at 588, and their own declarations belie any such inference.  The Court concludes that all four of the foregoing factors weigh in favor of Tobias's entitlement to a fee award and now turns to the reasonableness of his request.

#### c.  Reasonableness

Courts compute the amount of a fee award "by calculating the 'lodestar' — the number of hours reasonably expended multiplied by a reasonable hourly rate." *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 47 (quoting *Bd. of Trustees of Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).  The burden is on the applicant to establish both the reasonableness of the rate and the amount of time incurred.  *Id.*  In cases like this, where the plaintiff is represented by "public-interest attorneys without a customary hourly rate, courts look to the prevailing market rates in the community." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 229 (D.D.C. 2011).  Because the defendants concede that Tobias's rates, which are derived from the federal government's Fitzpatrick matrix, are reasonable, the dispute over reasonableness is limited to the amount of time incurred.

In spite of the defendants' objections, which the Court addresses below, Tobias's request for fees are overwhelmingly reasonable with relatively narrow exceptions.

> #### i.    Tobias has not requested fees or costs for work that was "needless" or duplicative."[4]

A court may bar fee recovery for "hours that are excessive, redundant, or otherwise unnecessary." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60 (D.D.C. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The agency points to three examples of what it sees as needless or duplicative billing entries.  The Court disagrees.

First, the agency objects to billing $1,303 for 6.5 hours spent by a paralegal drafting the complaint, on the ground that the complaint is too boilerplate to justify such time.  The Court finds this billing reasonable.  Tobias requested fees only for the work of a low-cost timekeeper,

---

[4] Tobias concedes that he included three duplicative 0.1-hour entries which he has voluntarily stricken from his fee demand.  *See* Reply at 20.

charging just $200 per hour to draft a pleading initiating litigation regarding nine separate FOIA requests across multiple FOIA offices.  This conduct strikes the Court as eminently reasonable and, indeed, courts often allow plaintiffs to recoup more for doing less.  *See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 999 F. Supp. 2d, 61, 65, 74 (D.D.C. 2013) (allowing 8.5 hours in fees for a FOIA complaint involving a single request); *Am. Oversight v. Dep't of Just.*, 375 F. Supp. 3d 50, 58–59, 80 (D.D.C. 2019) (allowing $5,324 in fees for preparation of complaint involving a single request).

Second, the agency contends that Tobias should not recover for $289.50 of attorney and paralegal time spent reviewing Court orders, citing no law but referring to the entries as "lack[ing] . . . billing judgment" and "facially unreasonable."  Opp'n 41–42.  The Court agrees with Tobias that this request is reasonable under the circumstances.  As he explains, "counsel spent the minimum 0.1-hour increment reviewing the orders and voluntarily wrote off the time of all but one attorney who reviewed them."  Reply 25.  Given that parties must review court orders, this request is eminently reasonable.  *See Two-Way Media LLC v. AT&T, Inc.*, 782 F.3d 1311, 1316–17 (Fed. Cir. 2015) (affirming no excusable neglect where party had failed to read docketed orders for more than a month after issuance).

Third, the defendants challenge certain billing for senior-attorney supervision as duplicative, but supervisory structures in fact "often reduce the total bill compared to the alternatives, where the highest-billing attorney does all the work."  *Eddington v. Fed. Bureau of Investigation* at 20, No. 1:19-cv-2952-RDM (D.D.C. July 25, 2024) (slip op.).  Without more, the Court finds this arrangement reasonable, and indeed preferable to the alternative just described.

####        ii.    **Tobias's review of document production is compensable and reasonable, but certain clerical tasks are not.**

The defendants next challenge whether Tobias should be able to obtain attorneys' fees for time spent reviewing the documents produced to the defendants. *See* Opp'n 46–50.  The Court agrees with those cases that conclude that once litigation has begun, time spent reviewing FOIA production may be considered a reasonable litigation cost for a plaintiff otherwise eligible. *See Reyes v. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 172 (D.D.C. 2018) ("Plaintiff's counsel needed to review the documents before they could know whether they would need to challenge any disclosures or redactions."); *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 351 (D.D.C. 2014); *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 239–40 (D.D.C. 2011); *but see Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011).  Particularly so here, where Tobias's billing entries reflect a review of the government's production to determine "inadequacies" that may require further litigation. *See* Opp'n 47–50.  Indeed, as the defendants concede elsewhere, it is Tobias's acceptance of the adequacy of their production that resolved the merits of the dispute. *See id.* 36–37.  When an attorney's legal work is necessary for the resolution of the merits of a case, it will typically constitute a reasonable basis for attorneys' fees.  Such is the price of litigation.  The Court will permit Tobias to recover for his counsels' production review.

However, awarding fees for "purely clerical tasks" or work reflecting "normal administrative overhead" is not reasonable, as such tasks can be "undertaken by clerical, not legal, personnel." *Michigan v. Envt'l Prot. Agency*, 254 F.3d 1087, 1095 (D.C. Cir. 2001). Many of the entries identified by the defendants meet these criteria, particularly time spent saving ECF documents to file. *See, e.g.*, Opp'n 47–50.  The Court will therefore exclude the eighteen 0.1-hour entries, billed for a total of $403.60, from Tobias's award.

15

### iii. Fees for merits litigation after January 14, 2025 are reasonable, but the Court will reduce them by fifty percent.

The defendants next contend that Tobias cannot recover for merits-related fees after January 14, 2025, when he indicated he was satisfied with the defendants' production, since his satisfaction resolved the merits of the case and rendered the merits dispute moot. Opp'n 44–45. The defendants ask the Court to exclude 1.6 hours of attorney work billed at $969.30 that would have been avoided by prompt dismissal. *Id.* Tobias responds that even a prompt dismissal would have likely produced other costs, such as a motion to extend the 14-day fee-petition deadline that dismissal would have triggered under Federal Rule of Civil Procedure 54(d)(2)(B)(i). Reply 28. The Court declines the defendants' invitation to "nitpick" 1.6 hours of Tobias's billing against a hypothetical counterfactual. *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 65, 75 (D.D.C. 2013). That said, it seems plausible that a more efficient litigation strategy could have reduced Tobias's expenses and is disinclined to expose taxpayers to the full brunt of his choices. The Court will therefore reduce the fees at issue by $484.65, or 50%. Fee shifting, after all, is an exercise in "rough justice," not arithmetic perfection. *See Fox v. Vice*, 563 U.S. 826, 838 (2011).

### iv. Tobias may recover for fees on fees, but the Court will reduce his recovery for settlement negotiations.

The defendants' final gripe is with Tobias's billing for his fee-petition briefing, including unsuccessful efforts to settle the fees issue. Opp'n 38–39, 50–52. The Court addresses the fees-on-fees issue before turning to the settlement fees.

#### 1. Recovery for costs of fee petition briefing.

The D.C. Circuit has long since "settled" that "[h]ours reasonably devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985). But as the defendants rightly point out, fees on fees may not be "excessive."

16

*Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008).   The Supreme Court has emphasized that a prevailing party's "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

Here, that is precisely what has happened.  Tobias requests $11,173.80 for litigating this case on the merits, which the Court has already reduced by $888.25 and which Tobias has reduced by additional $182.40 — and seeks $5,762.70 for unsuccessful fee-settlement efforts, $11,546.90 for his fee petition, and $21,088.70 for his reply.  Yet the driving force behind the bulk of those costs is traceable to the defendants' conduct, not Tobias.  Indeed, the vast majority of the fees-on-fees request is driven by the costs of preparing Tobias's reply, which he filed in response to the defendants' 45-page opposition raises a host of legal issues, the majority of which border on frivolous and have been rejected.  In other words, it is the defendants, not Tobias, who have caused this dispute to spiral into a "second major litigation." *Id*. at 437.  The Court declines to penalize Tobias under those circumstances by indexing their potential fee-on-fee award to their merits-fee award.  *But see, e.g.*, *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 374 (D.D.C. 2025).  Adopting such a rule encourages the defendants to encumber their opposition briefing with meritless arguments, requiring lengthy and costly reply briefing by the plaintiffs for which they will obtain only limited fee recovery, and wasting precious judicial resources in the process. *See* Opp'n 45 (noting importance of "allow[ing] the Court to focus on more pressing matters").

Instead, as the Court has previously explained, the appropriate standard is whether the requested fees were "necessary to effectively litigate a contested motion for attorneys' fees." *Prot. the Public's Tr. v. Internal Rev. Serv.*, No. 1:23-cv-340-RCL, 2024 WL 663427, at *13 (D.D.C. Feb. 16, 2024).  Here, Tobias understood that the defendants disputed all aspects of their

17

fee eligibility. *See* Email from Assistant U.S. Attorney Douglas C. Dreier to Merrick Wayne, Ex. 2 to Second Decl. of Matthew Topic, ECF No. 36-2. That forced Tobias to establish every element of his entitlement to fees, and despite doing so, his petition and reply nevertheless total fewer pages than the defendants' opposition. The 48.5 hours spent drafting the fee briefing, which represents just over one hour per page, reflects a reasonable allocation of attorney resources under the circumstances. *Cf. Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (discounting fees-on-fees by 50% because "the preparation of the [filings] could have been accomplished in approximately half the time listed" where plaintiff spent "almost 40 hours" preparing "an 8-page" fee reply and "60+ hours" preparing a "12-page merits Reply"). The Court will allow a full award for the preparation of Tobias's fee petition briefing. *See Eddington*, slip op. at 1–6 (awarding $43,679 for work performed primarily on fee petition litigation in light of defendants' extensive, and largely meritless, objections).

### 2. Recovery for settlement efforts

Nor does the Court agree with the defendants that it must categorically exclude recovery for attorney time spent on unsuccessful settlement negotiations. The defendants contend that because "the degree of success obtained" in litigation is "the most critical factor" in deciding the appropriate size of a fee ward, time spent on unsuccessful settlements cannot form the basis for a fee petition. *Hensley*, 461 U.S. at 437. But no case the defendants cite have applied that principle to an unsuccessful settlement effort. *See Anthony v. Sullivan*, 982 F.2d 586, 590 (D.C. Cir. 1993) (addressing time spent on fees-on-fees litigation and related appeal). On the other hand, other sessions of this Court have acknowledged that a plaintiff may seek fees for unsuccessful fee settlement efforts if she "does ultimately prevail" in the fee litigation "by obtaining fees" through a court order. *Coffey*, 316 F. Supp. 3d at 172. The defendants contend

*Coffey* is out of step with *Hensley*, but the Court disagrees: as the foregoing quotation makes clear, ndeed, eventual success on the merits of a fee petition may lend credence to the prevailing party's earlier settlement position and may suggest that the government miscalculated the strength of its own case.

In this case, it is clear that the parties' settlement negotiations were complex and that the parties agreed on very little, given that the defendants were ultimately unwilling to concede no aspect of Tobias's fee petition. *See* Email from Assistant U.S. Attorney Douglas C. Dreier to Merrick Wayne, Ex. 2 to Second Decl. of Matthew Topic, ECF No. 36-2. In light of the Court's ruling today, the government's position was ill advised. The Court will not penalize Tobias for persisting in settlement efforts on these facts. *See Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 297 (D.D.C. 2016) (advising that in FOIA fee litigation, courts "encourage[] parties to resolve their differences without motions").

Finally, the Court declines to cut off Tobias's fee eligibility at the time of the defendants' $7,500 offer of judgment. Opp'n 52. Given the reasonableness of the foregoing, the offer of judgment was plainly not calibrated to the actual costs incurred on the merits.

## IV.    CONCLUSION

Tobias's petition is hereby **GRANTED** and the Court **AWARDS** reasonable attorneys' fees to Tobias in the amount of $48,921.45, reflecting his final request of $49,809.70 less the $888.25 in reductions addressed above.

**SO ORDERED.**

Date: March 31, 2026

Royce C. Lamberth
United States District Judge

19